# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Milton I. Shadur | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 4754 | **DATE** | 12/2/2002 |
| **CASE TITLE** | Dorothy Burden-Meeks, et al vs. Dwight W. Welch, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Plaintiff's motion to strike expert reports and bar expert witness is granted in part and denied in part. (56-1)

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | DEC 0 2 2002 | |
| | Docketing to mail notices. | | date docketed | S-9 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 12/2/2002 | |
| | | | date mailed notice | |
| SN | courtroom deputy's initials | | SN | |
| | | | mailing deputy initials | |

U.S. DISTRICT COURT
CLERK
02 DEC -2 PM 3: 55

Date/time received in central Clerk's Office

DOROTHY JEAN BURDEN-MEEKS, et al., )
)
               Plaintiffs, )
)
      v. )    No. 99 C 4754
)
DWIGHT W. WELCH, et al., )
)
               Defendants. )

DEC 3 2002

## MEMORANDUM OPINION AND ORDER

Upon submission of the motion filed by plaintiffs Dorothy
Jean Burden-Meeks and Sheryl Perez "to strike two incomplete and
untimely expert reports inexplicably withheld by defendants until
October 1, 2002 and to bar those experts from testifying at
trial" (Motion at 1), this Court granted the request of counsel
for defendant Dwight Welch ("Welch") to tender a written response
within two weeks. That response was timely submitted on
November 27. For the reasons stated in this memorandum opinion
and order, the motion is granted in part and denied in part.

Welch's able counsel begin their Response at 1 forthrightly
enough:

> There may of course be no reasonable dispute that
> obedience to the constraints of scheduling orders
> entered by a District Judge is a critical component of
> that Court's ability to perform its case management
> responsibilities. See, e.g., Jochins v. Isuzu Motors,
> Itd., 144 F.R.D. 350, 356 (S.D. Iowa 1992). Moreover,
> the "flouting of discovery deadlines causes [the
> potential for] substantial harm to the judicial
> system." Jochins, 144 F.R.D. at 356.

But having done so, they fail to persuade this Court that their

59

client, who has persistently flouted the discovery process in this action with obstructionist tactics--something that explains in large part why this lawsuit is one of a very small handful of cases on this Court's calendar that have passed their third anniversaries--is entitled to rely on witnesses and reports proffered after the often-extended close-of-discovery timetable in this case.

It is true that part of the delay is attributable to the unfortunate onset and persistence of an illness that has afflicted Welch's original counsel, Mark Smolens ("Smolens"). Both because attorney Smolens has proved to be a responsible advocate in past litigation and because of natural sympathy for his condition, this Court has been more than forthcoming in granting a number of requested extensions on that score. Even so, plaintiffs' counsel correctly points out that some mixed signals have been emanating from Welch's camp as to whether attorney Smolens continues to have primary responsibility for the case or whether his partner Richard Ryan ("Ryan") is taking over as lead counsel.

In all events this Court ultimately set what was intended to be a _firm_ and _final_ close of discovery date of August 14, 2002, coupling that setting--as is its regular practice--with a contemporaneous status hearing date to ascertain (1) whether any tag ends of discovery still remained that were beyond counsel's

control and (2) what course of action should be taken toward disposition: either ordering a final pretrial order ("FPTO") looking to a trial date or setting a timetable for a motion or cross-motions for summary judgment. On August 14 plaintiffs' counsel reported that because Welch had once again not complied with his obligations of production, it had not been possible for them to proceed with his deposition. This Court accordingly granted an expressly limited "window" in the close-of-discovery wall to allow plaintiffs' counsel to take the Welch deposition (Aug. 14 Tr. 7:11 to 7:20[1]), the failure to have done so clearly having been Welch's fault and not plaintiffs'.

At that point attorney Ryan stated that his side had just received two expert opinions from plaintiffs, one having calculated plaintiffs' claimed damages and the other being the report of a medical expert. That was just not true--the financial report had been delivered 10 months earlier and the medical opinion had been delivered two months earlier--but this Court will give Ryan the benefit of the doubt by ascribing that misrepresentation to his unfamiliarity with the case rather than

---

[1] This opinion follows the convention of indicating the transcript page before the colon and the line on that page after the colon. Because most transcript references in this opinion are to the August 14 proceeding, those further citations will simply read "Tr. --." And because the sequence and context of what took place during that proceeding are significant, pages 7 through 10 of that transcript have been attached as an exhibit to this opinion.

3

its involving any deliberateness. What is significant, though, is that when plaintiffs' counsel corrected that mischaracterization, this Court said specifically that discovery could <u>not</u> be opened up by Welch with respect to the medical expert (Tr. 8:25 to 9:5 and 9:9 to 9:15), although the financial expert (the "number cruncher," Tr. 8:11) could be inquired of as to the predicate for his calculations.[2]

Welch's counsel would have it otherwise as to the medical expert, pointing to a brief exchange that took place very shortly after this Court had specifically said "You can't open that one [the medical opinion] up for that" (Tr. 8:25 to 9:1)--in which "that" had been attorney Ryan's just-previous statement (Tr. 8:14 to 8:16):

> MR. RYAN: I agree. But we will have to obviously identify somebody in response to the three people that are listed, if necessary. One of the problems was --

---

[2] It is of course obvious that the damages numbers will have to be updated to the time of trial in all events, so the only real question in that respect would be whether Welch's counsel would be limited to cross-examining plaintiffs' expert or would be allowed to call a counter-expert. In that regard, the statement by plaintiffs' counsel during a later (September 24, 2002) motion hearing principally devoted to another subject (Sept. 24 Tr. 8:12 to 9:12) indicated that the parties had worked out between themselves an arrangement for defense counsel (both Welch's lawyers and the lawyer for his codefendant) to depose plaintiffs' damages expert, with a counter-expert then to present his Fed. R. Civ. P. ("Rule") 26(a)(2)(C) report and thereafter to submit to a deposition if plaintiffs' counsel so desired. This Court will not disturb that apparent arrangement, and that explains the limited extent to which plaintiffs' current motion is being denied.

4

Then this Court reconfirmed the narrow specificity of the discovery "window" as embracing <u>only</u> Welch's delayed deposition (Tr. 9:9 to 9:15):

> THE COURT: Let me put it this way. I am not going to grant further stuff if after having taken a look at it you believe that there is something else you need. All I am doing at this point is declaring a window for the Welch deposition. And anything else specific that you know that is reasonable I can hear that now. But other than that I am just creating that window for another 30 days, let's say until September 16th.

What then followed was a change of subject, with plaintiffs' counsel shifting to a mention of two other depositions that he had been unable to take because of scheduling problems. This Court accordingly enlarged the "window" a bit to permit the taking of those depositions within the same time frame, but it did <u>not</u> understand that as somehow reverting or applying to the medical expert subject, on which this Court had already ruled definitively. And so this Court did not understand Ryan's later statement at Tr. 10:4 to 10:6, followed by this Court's "All right" (Tr. 10:7) as granting permission for the medical expert purpose. Finally, given the entire sequence of events and the context of the few minutes' exchange on August 14, attorney Ryan could not reasonably have viewed this Court as having changed its just-announced firm stand on the subject in such a brief and cryptic manner.

One last matter should be mentioned: the assertion by

Welch's counsel that the two presently challenged reports "were submitted in compliance with the strictures of Rule 26's timing sequence" (Response at 8). It is true that Rule 26(a)(2)(C) contains a default timetable for the required expert disclosures of "at least 90 days before the trial date or the date the case is to be ready for trial." But those presumptive dates operate only when neither of two other factors is involved:

1. "[I]f the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party"--which is certainly true of Welch's attempted cross-designations here--Welch's required disclosures were required to have been made "within 30 days after the disclosure made by the other party." By that measure Welch's responses are far, far out of time.

2. In all events, both of the specified timetables under the Rule apply only "[i]n the absence of other directions from the Court." As already stated, this Court expressly gave the parties such other directions, and that trumps Welch's attempted reliance on the other timetable in the Rule.

## Conclusion

If it had not been for attorney Smolens' illness and Welch's creation of delays by his conduct, this case would long since have passed the FPTO stage and would then have been tried.

Needless to say, no adverse consequences are to be visited on Welch because of the former factor, but if that factor had been entirely absent and if Welch had carried out his own responsibilities,[3] the case still would have been disposed of before now. This Court expects to set a firm (and short) timetable for the filing of the FPTO at the next status hearing, and it would be entirely inappropriate under all of the circumstances to prolong that process further by allowing Welch's counsel to add still another layer of discovery and its aftermath to the case. Accordingly:

1. In light of the apparent accession by plaintiffs' counsel (at least that is what the September 24, 2002 transcript appears to reveal) to the belated response by Professor Michael Pagano (Welch's finance expert) to the long-ago-submitted opinion of plaintiffs' finance expert Professor Allan Drebin, plaintiffs' motion to strike the Pagano report and bar his testimony is denied. If this ruling has misread the situation (after all, plaintiffs' counsel have not had an opportunity to reply to Welch's response) or if there are other Rule 26 flaws in the Pagano report, this Court would be prepared to entertain the

---

[3] Those delinquencies on Welch's part were compounded somewhat recently when his wife stonewalled during the taking of <u>her</u> deposition, refusing to answer a whole battery of questions. That refusal occasioned the need for still another motion to compel on the part of plaintiffs' counsel.

possible partial or total reconsideration of this ruling.

2. By contrast, plaintiffs' motion to strike the medical report by Dr. David Shenker and to bar his testimony at trial is granted.

Milton I. Shadur
Senior United States District Judge

Date: December 2, 2002

1  document that Mr. Welch prepared and gave us yesterday.

2          THE COURT:  Well, subject to the same kind of

3  limitation -- and that is, that it does not go outside of your

4  office --

5          MR. KARSH:  Absolutely.

6          MR. RYAN:  -- I would assume that most everything on

7  this list is in joint tenancy with his wife, so that would be a

8  problem.

9          THE COURT:  Well, but he can just reflect that, you

10  know.

11          All right.  Now what about the rescheduling of the

12  deposition?  Obviously you don't have the thing in hand.

13          MR. PIERS:  We think it would be prudent to do that.

14  In fact we have supplemented some discovery recently.  And we

15  thought perhaps if we -- discovery will close today per your

16  order.  If we can get another month's window --

17          THE COURT:  Yes.

18          MR. KARSH:  I think that if we can get those produced

19  within two weeks, we can then schedule his deposition within

20  the remaining two weeks.  We would like, your Honor --

21          THE COURT:  Is everything else done in terms of

22  discovery?

23          MR. RYAN:  We received, apparently last night when I

24  was in a meeting, a group of documents and some supplemental

25  answers to interrogatories.  There appears to be a lot of

1  medical treatment. They now have named two additional opinion

2  witnesses. And --

3          THE COURT: Opinion witnesses or treaters?

4          MR. KARSH: They are not medical witnesses at all.

5  We have one additional expert witness who does the present

6  value calculation for past and future lost wages.

7          MR. O'CONNOR: And a physician.

8          MR. KARSH: The physician was disclosed with the

9  report in May.

10         THE COURT: Obviously, look. To the extent that you

11 have got somebody who is just a number cruncher, you know,

12 that's no -- you can inquire of that person obviously as to the

13 predicate for the calculations.

14         MR. RYAN: I agree. But we will have to obviously

15 identify somebody in response to the three people that are

16 listed, if necessary. One of the problems was --

17         THE COURT: Well, I don't know about the medical.

18 But because he says that's something that I gather was -- was

19 that an opinion witness or treater or what?

20         MR. KARSH: It is both a treater in the sense that he

21 has seen the plaintiff and an opinion witness. And we served a

22 Rule 26(a)(2) report per the rules.

23         THE COURT: How long ago?

24         MR. KARSH: In May.

25         THE COURT: Well, you can't open that one up for

1 that. If and to the extent that you had a Rule 26(a) report
2 that's one of the things that enables people, the way the
3 drafters said it, and that's been true, sometimes you don't
4 have to take the deposition of the person at all, because you
5 have got the story pinned down.

6       MR. RYAN: Your Honor, we may no have to. I haven't
7 looked at any of this. I am just looking at it from that
8 perspective.

9       THE COURT: Let me put it this way. I am not going
10 to grant further stuff if after having taken a look at it you
11 believe that there is something else you need. All I am doing
12 at this point is declaring a window for the Welch deposition.
13 And anything else specific that you know that is reasonable I
14 can hear that now. But other than that I am just creating that
15 window for another 30 days, let's say until September 16th.

16       MR. KARSH: Your Honor, there are two additional
17 depositions. We have had a great deal of trouble scheduling
18 depositions of the defendants. We were unable to schedule.
19 They were unable to make a witness available for a 30(b)(6)
20 deposition and for a deposition --

21       THE COURT: The ones that you came in on the motion
22 before?

23       MR. KARSH: That is correct.

24       MR. RYAN: I think they are scheduled for next week.

25       THE COURT: All right. Well, those you can take

1 obviously.

2          MR. KARSH:  Within the 30 days?

3          THE COURT:  Yes.

4          MR. RYAN:  We intend, your Honor, to identify

5 somebody in response to the disclosure of the opinion

6 witnesses.  And we can do so within the time that you have set.

7          THE COURT:  All right.

8          THE WITNESS:  I will give you --

9          MR. RYAN:  Can we have 45 days, your Honor?  I am

10 saying this only because I am stating a 7-day trial the day

11 after Labor Day in state court that is final, final, final.

12          THE COURT:  I will give you October 1st.  And that's

13 a status date also.

14          MR. RYAN:  Thank you.

15          THE COURT:  9 o'clock, October 1st --

16          MR. KARSH:  Your Honor, there are two further

17 matters.

18          THE COURT:  What's that?

19          MR. KARSH:  One, we took a deposition yesterday and

20 which there was an invocation of privilege.  We will bring a

21 motion to resolve the attorney-client privilege issue raised in

22 that deposition.  I talked to my client after the deposition on

23 the telephone and told him what the issues were that were

24 raised in that deposition of the attorney for the City of Palos

25 Heights -- the City of Country Club Hills. And he's willing to